UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ALLEN ATKINS,

        Plaintiff,                      Case No. 2:23-cv-130

v.                                           Honorable Paul L. Maloney

UNKNOWN MENARD et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court previously stayed proceedings in this case and referred it to the Prisoner Civil Rights Litigation Early Mediation Program. (ECF No. 6.) On August 17, 2023, Plaintiff filed a statement seeking to have this matter excluded from early mediation. (ECF No. 8.) In an order (ECF No. 10) entered on August 21, 2023, the Court removed the matter from early mediation.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss, for failure to state a claim, the following claims against Defendants: (1) Plaintiff's claims for declaratory and injunctive relief; and (2) Plaintiff's Eighth

Amendment claim against Defendant Stain. The following claims for damages remain in the case: (1) Plaintiff's First Amendment retaliation claims against Defendants Menard and Stain; and (2) Plaintiff's Eighth Amendment sexual assault claim against Defendant Menard.

## Discussion

### I. Factual Allegations

Plaintiff Allen Atkins is currently incarcerated by the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events of which he complains occurred, however, during Plaintiff's prior incarceration at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Correctional Officer Menard and Health Unit Manager Bethany Stain.

Plaintiff alleges that on April 25, 2022, Defendant Menard came into Plaintiff's cell while Plaintiff was asleep. (ECF No. 1, PageID.4.) Plaintiff awoke to "being sexually assaulted by Defendant Menard." (*Id.*) Plaintiff alleges that Defendant Menard performed fellatio on him and placed his fingers inside Plaintiff's rectum. (*Id.*) Plaintiff "pushed Defendant Menard off him and told Defendant Menard that [he would press] charges for sexual assault." (*Id.*) Defendant Menard responded that he would order Plaintiff's transfer from the Lime Unit, a Level II unit, to the Steamboat Unit, a segregation unit at URF. (*Id.*) Defendant Menard left, and Plaintiff changed his sheets, "traumatized from Defendant Menard's sexual assault." (*Id.*)

Later that evening, non-party Sergeant Maclaren called Plaintiff to the officer's station to give Plaintiff a Notice of Mail Rejection. (*Id.*) Sergeant Maclaren also told Plaintiff that Defendant Menard had written Plaintiff a misconduct ticket and contraband removal record. (*Id.*) Plaintiff told Defendant Maclaren about the sexual assault, and that Defendant Menard had threatened to have Plaintiff placed in segregation because of "Plaintiff's oral notice to press charges for sexual assault." (*Id.*)

Plaintiff asked Sergeant Maclaren if he would be placed in segregation, and Sergeant Maclaren told Plaintiff that he would not, but would be placed on "non bond toplock" status. (*Id.*) Plaintiff asked Sergeant Maclaren to call the state police; Sergeant Maclaren responded that the state police would not be called unless Plaintiff submitted a Prison Rape Elimination Act (PREA) grievance. (*Id.*, PageID.5.) Later, during evening count time, Sergeant Maclaren stopped by Plaintiff's cell and told Plaintiff that he was going to cancel the misconduct because "other prisoners notified [him] that the witnessed Defendant Menard enter Plaintiff's cell [and] sexually assault Plaintiff while Plaintiff slept." (*Id.*)

Three days later, on April 28, 2022, Plaintiff left his unit to go to the cafeteria for breakfast. (*Id.*) Non-party Officers Porterfield and McKinney told Plaintiff that he was on "non bond toplock" status and gave him a required pass to exit the unit. (*Id.*) Plaintiff responded that Sergeant Maclaren had cancelled the misconduct, so he should no longer be on "non bond toplock" status. (*Id.*) Officers Porterfield and McKinney told Plaintiff they would reach out to the Hearings Officer about the matter. (*Id.*) After Plaintiff returned to his unit from breakfast, Officers Porterfield and McKinney told Plaintiff that the Hearings Officer had confirmed that Plaintiff had "no misconduct reports pending." (*Id.*)

Plaintiff goes on to allege that from April 25, 2022, through September 1, 2022, he repeatedly wrote to Defendant Stain to request STD testing after the sexual assault. (*Id.*) On August 18, 2022, while Plaintiff was in the Steamboat Unit, Defendant Stain conducted medical rounds. (*Id.*, PageID.6.) Plaintiff asked her why she had never responded to his requests for STD testing. (*Id.*) Defendant Stain told Plaintiff that Defendant Menard had ordered her to ignore those requests, and said that she does not help prisoners press charges on staff members. (*Id.*) Defendant Stain then said, "Welcome to URF, you are f***ed," then walked away. (*Id.*) Plaintiff was later

3

transferred to the G. Robert Cotton Correctional Facility (JCF) on September 1, 2022. (*Id.*, PageID.5.)

Based upon the foregoing, Plaintiff asserts First Amendment retaliation and Eighth Amendment claims against both Defendants. (*Id.*, PageID.6–7.) Plaintiff seeks declaratory relief, as well as injunctive relief in the form of an order referring Defendant Menard to the Michigan State Police (MSP) for criminal prosecution. (*Id.*, PageID.7.) He also seeks compensatory, punitive, and nominal damages. (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

4

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Claims for Declaratory and Injunctive Relief

As noted above, Plaintiff seeks declaratory relief, as well as injunctive relief in the form of an order referring Defendant Menard to the MSP for criminal prosecution. (ECF No. 1, PageID.7.) Plaintiff, however, is no longer incarcerated at URF, where he alleges Defendants are employed and where the harm allegedly occurred.

The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained). Underlying this rule is the premise that such relief is appropriate only where a plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., id.*; *Alvarez v. City of Chicago*,

649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Plaintiff is now incarcerated at DRF and has not alleged facts that would show he would be subject to further future conduct by Defendants. Moreover, with respect to Plaintiff's request for injunctive relief in the form of referring Defendant Menard to the MSP for criminal prosecution, Plaintiff has no right to require the government to initiate criminal proceedings. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Shelley v. Metzger*, 832 F. App'x 102, 105 (3d Cir. 2020) (concluding that the district court did not err in denying the inmate-plaintiff's request for injunctive relief in the form of, inter alia, referring a defendant for criminal prosecution because he had no right to such relief). Consequently, the Court will dismiss Plaintiff's claims for declaratory and injunctive relief.

### B.   Claims for Damages

#### 1.   First Amendment Retaliation

Plaintiff contends that Defendant Menard retaliated against him, in violation of his First Amendment rights, by issuing a false misconduct and contraband removal record. (ECF No. 1, PageID.6.) Plaintiff claims that Defendant Menard did so because of Plaintiff's "oral notice to press charges on Defendant Menard for sexual assault." (*Id.*) Plaintiff alleges further that Defendant Stain retaliated against Plaintiff's reporting of the sexual assault by refusing Plaintiff's requests for STD testing. (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

6

motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### a.     Protected Conduct

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance).

Likewise, "both the filing of a criminal complaint by a prisoner, as well as the threat to do so, are protected by the First Amendment, provided they are not baseless." *Entler v. Gregoire*, 872 F.3d 1031, 1043 (9th Cir. 2017); *see also Meyer v. Bd. of Cnty. Comm'rs*, 482 F.3d 1232, 1243 (10th Cir. 2007) (concluding that "filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right to petition the government for the redress of grievances"); *United States v. Hylton*, 710 F.2d 1106, 1111 (5th Cir. 1983) (filing of a "nonfraudulent criminal complaint against federal agents" represented "a legitimate and protected exercise of [plaintiff's] right to petition for the redress of grievances"). Here, Plaintiff contends that he told Defendant Menard that he would be "pressing charges for sexual assault." (ECF No. 1, PageID.4.) Plaintiff, therefore, has alleged sufficient facts indicating that he engaged in protected conduct for purposes of his retaliation claims.

7

### b. Adverse Action

Plaintiff contends that Defendant Menard issued him a false misconduct ticket and that Defendant Stain refused his requests for STD testing because of Plaintiff's oral notice that he wanted to press charges and because Plaintiff reported the alleged sexual assault. (ECF No. 1, PageID.6.) The issuance of a misconduct ticket can constitute adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007); *see also Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"). Likewise, a denial of medical treatment can constitute adverse action. *See O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. 2014). Thus, at this stage of the proceedings, Plaintiff has sufficiently alleged that Defendants engaged in adverse action for purposes of his retaliation claims.

### c. Retaliatory Motive

Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. Here, Plaintiff explicitly alleges that Defendant Menard threatened to have Plaintiff transferred to segregation after Plaintiff indicated that he would be pressing charges, and that Defendant Menard issued the misconduct ticket the same day as the alleged sexual assault. (ECF No. 1, PageID.4.) Plaintiff also alleges that Defendant Stain told Plaintiff that Defendant Menard ordered her to ignore Plaintiff's written requests for STD testing, and that "she doesn't help prisoners press charges on URF prison staff." (*Id.*, PageID.6.) Although Plaintiff has by no means proven retaliation, viewing the allegations in the complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff's First Amendment retaliation claims may not be dismissed on initial review.

### 2. Eighth Amendment Claims

#### a. Sexual Assault

Plaintiff contends that Defendant Menard violated his "Eighth Amendment rights to be free from cruel and unusual punishment, excessive force[,] and inhumane treatment" when he entered Plaintiff's cell and "sexually assaulted Plaintiff while Plaintiff slept." (ECF No. 1, PageID.7.)

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, the United States Court of Appeals for the Sixth Circuit Court has joined multiple other courts to conclude that even incidents of sexual touching coupled with sexual remarks may not rise to the level of an Eighth Amendment violation so long as the offensive conduct was "isolated, brief, and not severe[.]" *Rafferty*, 915 F.3d at 1095 (quoting *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005)). In contrast, repeated and extreme incidents may sufficiently state a claim. For example, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Id.* at 1095–96.

Here, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court may not dismiss Plaintiff's Eighth Amendment claim against Defendant Menard on initial review.

9

### b. Refusal of STD Testing

Plaintiff next contends that Defendant Stain violated his Eighth Amendment rights by showing deliberate indifference to his serious medical needs and denying Plaintiff's requests for STD testing. (ECF No. 1, PageID.7.)

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867

10

(6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

11

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff's complaint, however, is devoid of any facts from which the Court could infer that he suffered from a serious medical need that was ignored by Defendant Stain. Plaintiff's compliant is devoid of any allegations suggesting that he suffered any symptoms that were indicative of a possible STD after the alleged assault by Defendant Menard. Indeed, Plaintiff alleges no facts at all regarding his medical condition following the assault. *See Leonard v. Monroe Cnty., Fla.*, 789 F. App'x 848, 851 (11th Cir. 2019) (concluding that a prisoner failed to allege sufficient facts to show that he had a serious medical need because he "alleged no facts about his medical condition

12

or symptoms"); *see also Pace v. Myers*, No. 16-cv-542, 2016 WL 6071797, at *6 (S.D. Ill. Oct. 17, 2016) (dismissing the inmate-plaintiff's claim that he was denied STD testing because he failed to allege that he was "experiencing any symptoms that would indicate a need for testing or treatment to a layperson"); *Sorenson v. Minn., Dep't of Human Servs.*, No. 14-4193, 2015 WL 251720, at *12 (D. Minn. Jan. 20, 2015) (concluding that the plaintiff failed to set forth an Eighth Amendment claim premised upon a failure to provide STD testing because he did not "allege any facts to suggest that he actually had an STD, or that he ultimately sustained any actual injury that might have been remedied by the alleged STD testing"). "[A] fear of developing a serious medical need, however legitimate, is not the same as having a serious medical need." *See Pace*, 2016 WL 6071797, at *6. Accordingly, because Plaintiff has failed to allege sufficient facts to satisfy the objective prong, the Court will dismiss his Eighth Amendment claim against Defendant Stain.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss, for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), the following claims: (1) Plaintiff's claims for declaratory and injunctive relief; and (2) Plaintiff's Eighth Amendment claim against Defendant Stain. The following claims for damages remain in the case: (1) Plaintiff's First Amendment retaliation claims against Defendants Menard and Stain; and (2) Plaintiff's Eighth Amendment sexual assault claim against Defendant Menard.

An order consistent with this opinion will be entered.

Dated:   August 30, 2023                              /s/ Paul L. Maloney
                                                      Paul L. Maloney
                                                      United States District Judge