UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALLEN ATKINS, #742687,

        Plaintiff,

v.

UNKNOWN MENARD and
BETHANY STAIN,

        Defendants.
_____/

Case No. 2:23-cv-130

Hon. Paul L. Maloney
U.S. District Judge

**REPORT AND RECOMMENDATION**

### I.    Introduction

This Report and Recommendation (R&R) addresses Defendant Stain's motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 17.)

Plaintiff — state prisoner Allen Atkins — filed suit pursuant to 42 U.S.C. § 1983 on July 17, 2023. In his verified complaint, Atkins alleged that while he was incarcerated at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, Defendant Corrections Officer (CO) Menard and Defendant Health Unit Manager (HUM) Stain violated his rights under the First and Eighth Amendments. (ECF No. 1, PageID.6-7.) More specifically, Atkins alleged that Menard sexually assaulted him, and that after Atkins threatened to press charges against Menard, Menard issued Atkins a false retaliatory misconduct ticket and contraband removal record. (*Id.*, PageID.4.) Atkins further alleged that he informed Stain of the sexual assault

and asked her to test him for sexually transmitted infections, but that Stain denied his requests in retaliation for his threat to press charges against Menard. (*Id.*, PageID.5-6.)

On August 30, 2023, this Court issued a screening opinion finding that Atkins's complaint stated: (1) First Amendment retaliation claims against Menard and Stain, and (2) an Eighth Amendment sexual assault claim against Menard. (ECF No. 11, PageID.46-49, 53.) The Court also dismissed Atkins's claims for declaratory and injunctive relief because Atkins is no longer incarcerated at URF, which renders the claims moot. (*Id.*, PageID.45.)

Defendant Stain now moves for summary judgment, asserting that Atkins did not properly exhaust his administrative remedies with respect to his retaliation claim against her. (ECF No. 17.) More specifically, HUM Stain argues that Atkins's claim against her had to be exhausted through the Michigan Department of Corrections (MDOC) grievance process, but that Atkins did not pursue any relevant grievances against her through Step III of the process. (ECF No. 18, PageID.77-78.) Atkins did not respond but alleged in his complaint that "the URF Grievance Coordinator refused to respond to Plaintiff's timely Step I grievance form against Defendant Stain, which made exhaustion of administrative remedies impossible due to denial of access to the grievance system." (ECF No. 1, PageID.3.)

The undersigned respectfully recommends that the Court grant Defendant Stain's motion for summary judgment. There are no genuine issues of material fact. The grievance records provided by HUM Stain establish that Atkins did not pursue

any relevant grievances through Step III of the grievance process. Atkins attests that the URF Grievance Coordinator did not timely respond to the relevant Step I grievance, but he does not allege that he pursued a Step II grievance appeal in accordance with the MDOC grievance policy provided by HUM Stain. Defendant Stain has therefore established that Atkins failed to properly exhaust the available administrative remedies prior to filing suit.

## II.     Factual Allegations

As set forth in this Court's August 30, 2023, screening opinion, Atkins's verified complaint contained the following factual allegations:

> Plaintiff alleges that on April 25, 2022, Defendant Menard came into Plaintiff's cell while Plaintiff was asleep. (ECF No. 1, PageID.4.) Plaintiff awoke to "being sexually assaulted by Defendant Menard." (*Id.*) Plaintiff alleges that Defendant Menard performed fellatio on him and placed his fingers inside Plaintiff's rectum. (*Id.*) Plaintiff "pushed Defendant Menard off him and told Defendant Menard that [he would press] charges for sexual assault." (*Id.*) Defendant Menard responded that he would order Plaintiff's transfer from the Lime Unit, a Level II unit, to the Steamboat Unit, a segregation unit at URF. (*Id.*) Defendant Menard left, and Plaintiff changed his sheets, "traumatized from Defendant Menard's sexual assault." (*Id.*)
>
> Later that evening, non-party Sergeant Maclaren called Plaintiff to the officer's station to give Plaintiff a Notice of Mail Rejection. (*Id.*) Sergeant Maclaren also told Plaintiff that Defendant Menard had written Plaintiff a misconduct ticket and contraband removal record. (*Id.*) Plaintiff told Defendant Maclaren about the sexual assault, and that Defendant Menard had threatened to have Plaintiff placed in segregation because of "Plaintiff's oral notice to press charges for sexual assault." (*Id.*)
>
> Plaintiff asked Sergeant Maclaren if he would be placed in segregation, and Sergeant Maclaren told Plaintiff that he would not, but would be placed on "non bond toplock" status. (*Id.*) Plaintiff asked Sergeant Maclaren to call the state police; Sergeant Maclaren responded that the state police would not be called unless Plaintiff submitted a Prison Rape

> Elimination Act (PREA) grievance. (*Id.*, PageID.5.) Later, during evening count time, Sergeant Maclaren stopped by Plaintiff's cell and told Plaintiff that he was going to cancel the misconduct because "other prisoners notified [him] that the witnessed Defendant Menard enter Plaintiff's cell [and] sexually assault Plaintiff while Plaintiff slept." (*Id.*)
>
> Three days later, on April 28, 2022, Plaintiff left his unit to go to the cafeteria for breakfast. (*Id.*) Non-party Officers Porterfield and McKinney told Plaintiff that he was on "non bond toplock" status and gave him a required pass to exit the unit. (*Id.*) Plaintiff responded that Sergeant Maclaren had cancelled the misconduct, so he should no longer be on "non bond toplock" status. (*Id.*) Officers Porterfield and McKinney told Plaintiff they would reach out to the Hearings Officer about the matter. (*Id.*) After Plaintiff returned to his unit from breakfast, Officers Porterfield and McKinney told Plaintiff that the Hearings Officer had confirmed that Plaintiff had "no misconduct reports pending." (*Id.*)
>
> Plaintiff goes on to allege that from April 25, 2022, through September 1, 2022, he repeatedly wrote to Defendant Stain to request STD testing after the sexual assault. (*Id.*) On August 18, 2022, while Plaintiff was in the Steamboat Unit, Defendant Stain conducted medical rounds. (*Id.*, PageID.6.) Plaintiff asked her why she had never responded to his requests for STD testing. (*Id.*) Defendant Stain told Plaintiff that Defendant Menard had ordered her to ignore those requests, and said that she does not help prisoners press charges on staff members. (*Id.*) Defendant Stain then said, "Welcome to URF, you are f***ed," then walked away. (*Id.*) Plaintiff was later transferred to the G. Robert Cotton Correctional Facility (JCF) on September 1, 2022. (*Id.*, PageID.5.)

(ECF No. 11, PageID.42-44.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

4

disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

### IV. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on

---

1   If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*)  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

5

a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is

required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id*. (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to

informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days

8

after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all*

9

> relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

## V.    Analysis

As set forth above, HUM Stain argues that the MDOC grievance process was available to Atkins to exhaust his retaliation claim against her, but that Atkins did not pursue any relevant grievances against her through Step III of the process. (ECF No. 18, PageID.77-78.) Atkins did not respond but alleged in his complaint that "the URF Grievance Coordinator refused to respond to Plaintiff's timely Step I grievance form against Defendant Stain, which made exhaustion of administrative remedies impossible due to denial of access to the grievance system." (ECF No. 1, PageID.3.)

What Atkins fails to acknowledge in his complaint is that the MDOC grievance process outlined in MDOC Policy Directive 03.02.130[3] accounts for circumstances

---

[2]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

[3]    HUM Stain attached this grievance policy to her brief in support of her motion for summary judgment. (*See* ECF No. 18-2 (Exhibit 1).)

such as Atkins's, in which prisoners do not receive a timely response to their Step I grievance. Specifically, MDOC Policy Directive 03.02.130 at ¶ Z provides that: "[a] Step I grievance shall be responded to within 15 business days after the receipt of the grievance unless an extension is granted pursuant to Paragraph T." At ¶ DD, Policy Directive 03.02.130 provides that: "A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response."

Atkins does not contend that he requested or submitted any Step II grievance appeals in his verified complaint, nor did he so much as respond to Defendant Stain's motion for summary judgment based on his failure to exhaust. Furthermore, the grievance records provided by HUM Stain establish that Atkins did not pursue any *relevant* grievances[4] through Step III of the grievance process. (ECF No. 18-3, PageID.95-97, 111-140.) In the undersigned's opinion, HUM Stain has discharged her burden of establishing that there are no genuine issues of material fact, and that Atkins failed to exhaust the available administrative remedies prior to filing suit.

## VI. Recommendation

The undersigned respectfully recommends that the Court grant Defendant Stain's motion for summary judgment. There are no genuine issues of material fact. The grievance records provided by HUM Stain establish that Atkins did not pursue

---

[4] Atkins pursued numerous grievances against HUM Stain through Step III of the grievance process while he was incarcerated at URF, but those grievances did not concern Stains alleged refusal to test Atkins for sexually transmitted infections in retaliation for his threat to pursue legal action against CO Menard.

11

any relevant grievances through Step III of the grievance process. Atkins attests that the URF Grievance Coordinator did not timely respond to the relevant Step I grievance, but he does not allege that he pursued a Step II grievance appeal in accordance with the MDOC grievance policy provided by HUM Stain. Defendant Stain has therefore established that Atkins failed to properly exhaust the available administrative remedies prior to filing suit.

If the Court accepts this recommendation, Atkins's First Amendment retaliation and Eighth Amendment sexual assault claims against Defendant Menard will remain.

Dated:   January 24, 2024                                     /s/ *Maarten Vermaat*
                                                              MAARTEN VERMAAT
                                                              U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).